UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AUSTIN AITKEN, *Pro Se*, | ) | Case No.: 1:07 CV 106 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| TAYLOR BEAN & WHITAKER | ) | |
| MORTGAGE CORP., | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Plaintiff Austin Aitken, *pro se* ("Plaintiff" or "Aitken"), filed the above-captioned lawsuit against Defendant Taylor Bean & Whitaker Mortgage Corp. ("Defendant" or "TBW"), alleging breach of contract.  Now pending before the court are Defendant's Motion for Summary Judgment (ECF No. 22) and Plaintiff's Motion for Summary Judgment (ECF No. 19).  For the reasons set forth below, Defendant's Motion is granted and Plaintiff's Motion is denied.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of Plaintiff's attempt to secure a mortgage loan to purchase a home.

### A. VA Loan

On August 22, 2006, Consumer Financial Consulting ("CFC"), an independent broker, requested approval for a Veteran Affairs ("VA") loan in the amount of $80,000[1] for Plaintiff through Loan Prospector, an automated assessment program. (Aff. Ruby McClaney ("McClaney Aff.") ¶ 2, ECF No. 23-2.) Loan Prospector determined that Plaintiff could not be automatically pre-approved for a VA loan, and it was assigned to TBW to be manually underwritten. TBW describes itself as "a national wholesale mortgage lender that provides mortgage financing through independent brokers." (Def.'s Mot. Summ. J. at 2.) Ruby McClaney ("McClaney") was the TBW underwriter assigned to review Plaintiff's VA loan request. McClaney received Plaintiff's loan application and credit package on or about August 24, 2006. On the loan application, which was dated August 11, 2006, the subject property was listed as "TBD" [to be determined]. Plaintiff did not check either "yes" or "no" on any of the boxes in the section titled "Declarations." (Tab 1, ECF No. 23-2, at 9.) One of the questions in this section asked, "Are you obligated to pay alimony, child support, or separate maintenance?" (*Id.* at VIII.g.)

Although Plaintiff's debt-to-income ratio was approximately 45%, which is above the VA loan requirement limit of 41%, the VA loan guidelines allowed his loan to be approved if he could satisfy certain conditions. TBW informed CFC of Plaintiff's loan approval subject to conditions. On August 31, 2006, Aron Rolson ("Rolson") from CFC wrote a letter addressed "To Whom It May Concern," which stated:

> Austen Aitken has been pre-approved for a loan of $80,000 in order to purchase a home. He has put in a purchase contract for $93,000. . . . A final loan approval is still subject to a fully executed purchase agreement, an acceptably property appraisal, availability of closing funds <u>and satisfaction of any outstanding conditions</u>. A mortgage

---

[1] All loan amounts stated herein exclude financing fees.

>>loan commitment will be issued upon final loan approval. Any adverse change in his credit information or income status prior to closing could affect the final approval.

(Compl., ECF No. 1-2, at 14) (emphasis added.) McClaney states that one of the conditions that had to be satisfied was that "Mr. Aitken had to explain, and provide evidence of payment of, a collection entry documented on his credit report as 'ODHSCUYHGA.'" (McClaney Aff. ¶ 5.)

McClaney states that TBW received a second VA loan application for Plaintiff in the amount of $105,000, on October 9, 2006, in which Plaintiff listed a specific subject property and checked "no" under the question regarding child support obligations. (*Id.* ¶ 7; *see* Tab 2, ECF No. 23-2, at 15.) McClaney also states that TBW received a third VA loan application for Plaintiff in the amount of $81,000 on November 28, 2006. Plaintiff listed the same subject property and again checked "no" under the question regarding child support obligations. (*Id.* ¶ 9; *see* Tab 3, ECF No. 23-2, at 21.) The second and third loan applications are both unsigned and undated.

### B. FHA Loan[2]

On October 25, 2006, CFC requested approval for a Federal Housing Authority ("FHA") loan for Plaintiff through Loan Prospector. (Aff. Karen Gil de Rubio ("Gil de Rubio Aff.") ¶ 2, ECF No. 23-3.) Loan Prospector determined that Plaintiff could not be automatically pre-approved for an FHA loan, and it was assigned to TBW to be manually underwritten. Karen Gil de Rubio ("Gil de Rubio") was the TBW underwriter assigned to review Plaintiff's loan request. Because the FHA and VA loan processes are separate, neither McClaney nor Gil de Rubio knew about Plaintiff's other

---

[2] Although it appears that Plaintiff is pursuing a breach of contract claim only with regard to the VA loan, because he is proceeding *pro se* and his claims are not entirely clear, the court addresses the facts and circumstances relating to his application for an FHA loan as well.

-3-

loan request. (*Id.* ¶ 7; McClaney Aff. ¶ 8.) Gil de Rubio received Plaintiff's loan application and credit package on or about October 31, 2006. According to Gil de Rubio, eligibility for an FHA loan requires Plaintiff to have (1) at least 12 months without any adverse credit entries, and (2) a debt-to-income ratio not greater than 43%. (Gil de Rubio Aff. ¶ 4.) Because Plaintiff's credit report showed "a recent history of late payments," Gil de Rubio determined that Plaintiff did not meet one of the FHA loan requirements, and sent a notice of denial to CFC, dated October 31, 2006. (*Id.* ¶ 5; *see* Statement of Credit Denial, Termination or Change, Tab 2, ECF No. 23-3, at 47.) Plaintiff was never pre-approved for an FHA loan. (Gil de Rubio Aff. ¶ 8.)

### C. Negotiating the Purchase Price

Plaintiff states that on or around November 7, 2006, he received notice of a pre-approval for a VA loan for $80,000, based on his credit and financial standing. However, this amount was not enough to purchase the house that Plaintiff wanted, so the deal failed at closing. Plaintiff states that TBW told him that if he could get the purchase price reduced to approximately $82,000 then, with his pre-approval for $80,000, the deal would close without a problem.

On November 21, 2006, Plaintiff and the seller executed an Addendum to the purchase agreement that reduced the purchase price from $93,000 to $81,000. (Addendum A, Compl., ECF No. 1-2, at 16.) Plaintiff states that his realtor rewrote his requested loan for $81,000, at which point "ev[er]yone was in agreement that everything should go right though with no problem." (Compl. 2, ECF No. 1-2, at 4.) On November 26, 2006, Plaintiff's realtor sent a letter to Ann Rolson ("Rolson"), a Loan Consultant at CFC, stating that the owner of the home had agreed to the reduced purchase price of $81,000. (Pl.'s Resp. to Def.'s Answer, Ex. 1, ECF No. 5-2, at 7.)

### D. Denial of VA Loan

According to McClaney, TBW received information from CFC on December 1, 2006, indicating that Plaintiff had a $250 monthly child support obligation. (McClaney Aff. ¶ 10.) McClaney states that, prior to receiving this information from CFC, TBW did not have any knowledge that Plaintiff owed child support.[3] (McClaney Aff. ¶ 11.) The information came in the form of a notice from the Cuyahoga County Court of Common Pleas, Juvenile Division ("Court of Common Pleas"), which was filed on November 3, 2006, regarding a hearing that occurred on October 12, 2006, due to objections that Plaintiff had raised regarding the extent of his child support obligation. (*See* Tab 4, ECF No. 23-2, at 23-26.) According to Plaintiff, his child support payments were in arrears, and as a result of the October 12, 2006, hearing, his monthly obligation was reduced from $387 to $250. (Compl. at 8-9.)

Plaintiff states that he called TBW on December 5, 2006, and that a customer service representative told him that his mortgage loan payment would be $585 per month. Plaintiff also states that the customer service representative's supervisor told Plaintiff that the loan was a "done deal" except for some paperwork.

On December 7, 2006, Rolson from CFC wrote a letter addressed "To Whom It May Concern" stating:

> Due to the recent awareness of monthly child support payments the [sic] Mr. Austin Aitken is required to pay, he is unable to receive the loan that he had a pre-approval for. At this time it does not appear that Mr. Aitken is able to get a loan to purchase a home.

---

[3] Gil de Rubio also states that she was unaware of Plaintiff's child support obligation while she was reviewing his FHA loan request, and that this information would have increased Plaintiff's debt-to-income ratio above the permissible limit, thereby providing another reason for denial of his FHA loan. (Gil de Rubio Aff. ¶ 6; *see* Tab 1, ECF No. 23-3, at 10.)

-5-

(Pl.'s Mot. Summ. J., Ex. 1, 19-2, at 4.) Plaintiff states that he was informed by his realtor that the loan had been denied because of his $250 monthly child support payment.

TBW states that although CFC denied Plaintiff's loan, his VA loan request was still open in the TBW system as of the date Plaintiff filed his Complaint. (McClaney Aff. ¶ 12.)

### E. Procedural History

On December 8, 2006, Plaintiff filed the instant suit in the Cuyahoga County Court of Common Pleas. On January 12, 2007, Defendant removed the case to this court, based on diversity jurisdiction. Both parties subsequently moved for summary judgment.

### II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However,

"[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.*

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### III. LAW AND ANALYSIS

To establish a breach of contract claim, a plaintiff must show that a contract existed; that the plaintiff performed under the contract; that defendant breached the contract; and that the plaintiff suffered damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).

TBW moves for summary judgment on three grounds: (1) no enforceable contract existed because Plaintiff never received final approval for a mortgage loan; (2) Plaintiff's inequitable

-7-

conduct in failing to disclose his child support obligation in his loan application prevents him from enforcing any contract; and (3) even if a contract did exist, CFC, not TBW, acted to end the contract. Plaintiff moves for summary judgment on two grounds: (1) the VA loan had received final approval and therefore an enforceable contract existed; and (2) TBW had knowledge about Plaintiff's child support obligation because it appeared on his credit report, which TBW reviewed.

### A. Existence of Contract

To prove the existence of a contract, a plaintiff must demonstrate "all the essential elements of a contract including an offer, acceptance, the manifestation of mutual assent, and consideration (the bargained for legal benefit and/or detriment)." *Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004) (citing *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (Ohio 2002)). A pre-approval for a loan does not constitute an enforceable contract. *Honeycutt v. First Fed. Bank*, 278 F. Supp. 2d 893, 897 n.2 (W.D. Tenn. 2003) (holding that a "pre-approval letter did not create a contract for a mortgage loan . . . . Although Plaintiff seems to argue that the pre-approval letter represented the completion of the mortgage loan transaction, but for dotting the i's and crossing the t's, this is plainly not the case"); *Roether v. Worldwide Fin. Servs.*, 2003 Mich. App. LEXIS 2329, at *10 (Mich. Ct. App. 2003) ("The plain language of the certificate itself demonstrates it was not a contract for a loan; instead, it was a conditional offer of a loan.") Furthermore, under Ohio law and the Statute of Frauds, a loan agreement with a financial institution, such as a mortgage, must be in writing. O.R.C. § 1335.02(B); *Ed Schory & Sons v. Francis*, 75 Ohio St. 3d 433, 438-39 (Ohio 1996).

Plaintiff submits numerous documents in an effort to prove that his VA loan was approved, and therefore constituted an enforceable contract. Plaintiff does not, however, submit an actual

written mortgage contract. For example, Plaintiff submits a letter addressed to him from Anne Davis ("Davis"), a Consumer Protection Specialist with the Ohio Attorney General's office, dated January 10, 2007, in which Davis stated that she had made an inquiry to CFC in response to Plaintiff's consumer allegations against Defendant. Davis attached an e-mail that she received from Roy Johnson ("Johnson") at CFC, dated December 26, 2006. In the e-mail, Johnson stated:

> Mr. Aitken was a customer of ours. He applied through my company and <u>was originally approved for his loan</u>. There was a collection that was showing on his credit report and we asked him if it was paid. He response is [sic] yes it was. We asked him to supply us with a receipt showing it was paid. He sent us a statement that was showing he was paying child support [which] was not disclosed to us earlier in the process. <u>This led to his loan denial.</u> V.A. Loans have Maximum debt ratios. When adding in Mr. Aitken[']s child support payments, I don't know how he would have been able to pay for his mortgage.

(Pl.'s Mot. Summ. J., Ex. 1, ECF No. 19-2, at 3) (emphasis added.) Plaintiff argues that Johnson's statement that Plaintiff "was originally approved for his loan" proves that he received final approval for his loan. However, Johnson also stated that Plaintiff's loan was denied. It is clear from the context of Johnson's e-mail that the pre-approval of Plaintiff's loan was revoked because of an adverse change in his credit information. There is nothing to suggest that approval of the loan was ever final.

Plaintiff also submits a quote for home insurance, upon which Plaintiff handwrote "Started on my own insurance back in Oct of 2006 pick-up Quote in Nov of 06 after all parties said I had the home and deal was done." (Am. Compl., Ex. 1, 18-2, at 1-2.) The insurance quote, dated November 2, 2006, states that it is a "proposal for Homeowner's insurance" and that the "[q]uote is conditional upon completion of the Underwriting process." (*Id.* at 1, 2.) The court finds that this evidence does not prove that Plaintiff obtained final approval for a mortgage. First, this document

-9-

is merely a conditional proposal for homeowner's insurance, not proof of an actual homeowner's insurance policy. Second, proof that Plaintiff obtained homeowner's insurance does not constitute proof that he was approved for a home loan. Similarly, Plaintiff's evidence that, on November 29, 2006, TBW conducted an appraisal of the house that Plaintiff wanted to buy does not prove that Plaintiff received a final, approved mortgage contract. (*See* ECF No. 24-2, at 3-6.)

Construing all the evidence in Plaintiff's favor, he may have received assurances from TBW, CFC, and his realtor that he would be approved for a VA loan. However, these assurance do not create a binding mortgage loan. Plaintiff has offered no proof that he obtained final approval for his home loan. Furthermore, to the extent that Plaintiff's Complaint may be read to state a breach of contract claim for an FHA loan, he was never pre-approved for such a loan. Therefore, as Plaintiff has not provided proof of a written mortgage contract, Plaintiff's breach of contract claim fails as a matter of law.

### B. TBW's Knowledge of Child Support Payments

Plaintiff argues that the reason his VA loan was denied is erroneous because TBW was aware of his child support obligation throughout his loan application process. Defendant, in turn, argues that Plaintiff's failure to disclose his child support obligation constitutes "inequitable conduct" that precludes Plaintiff from enforcing any contract that may exist.

The record indicates that Plaintiff did not directly disclose his child support obligation on his VA loan application. It is clear that, on Plaintiff's first VA loan application, he left the question regarding child support blank. On the second and third VA loan applications, Plaintiff affirmatively indicated that he did not have any child support obligations by checking "no." However, the court notes that the second and third applications are unsigned and undated, and therefore do not

constitute reliable evidence admissible on summary judgment. In any event, the court finds it unnecessary to rule on Defendant's inequitable conduct argument in light of its determination that Plaintiff did not have an enforceable contract because he did not obtain final approval for a mortgage contract.

Plaintiff argues that TBW was aware, prior to pre-approving Plaintiff's VA loan application, that he had a child support obligation due to the credit reports that TBW reviewed. Plaintiff further argues that the fact that his child support obligation was reduced in October, 2006, from $387/month to $250/month, means that his financial situation actually improved from the time that his mortgage was pre-approved. However, in the face of TBW's signed affidavits that it was not aware of Plaintiff's child support obligation until December 1, 2007, Plaintiff has not presented any affidavit or other evidence to suggest that Defendant had knowledge about Plaintiff's child support obligation prior to pre-approving Plaintiff's VA loan.

In support of Plaintiff's argument that TBW was aware of the child support obligation, Plaintiff submits several documents that purport to be from credit reporting companies. Two printouts from TransUnion and Experian, respectively, indicate that TBW requested Plaintiff's credit report on several occasions between August and October 2006. (Am. Compl., ECF No. 18-2, at 5; ECF No. 19-2, at 1, 6.) TBW does not dispute that it requested Plaintiff's credit reports. Plaintiff also submits selected pages from two different credit reports, arguing that these reports clearly disclosed his child support obligation. However, neither credit report lists the date it was created or from which credit reporting company it comes. As there is no way to confirm when these reports were made, who made them, or whether TBW had access to them, these credit reports do not constitute reliable evidence and are therefore inadmissible. Furthermore, even assuming that the

evidence is admissible, the court finds that the statements in the reports do not clearly relate to child support payments.  One report lists a debt of $2,109 past due to the Ohio Department of Human Services and notes that the "Consumer Disputes This Account Information."  (ECF No. 18-2, at 3.) The other identifies "ODHSCUYHGA," lists amounts past due, and states that "CONSUMER DISPUTES THIS ACCOUNT INFO."  (ECF No. 24-2, at 1.)  Nothing in these entries refers to child support.

Furthermore, the court finds that even if Defendant knew that the items on Plaintiff's credit reports related to child support payments, the information that Defendant later received regarding the determination by the Court of Common Pleas in October, 2006, constituted an adverse changed circumstance.  Defendant pre-approved Plaintiff's VA loan application with the knowledge that two entries on his credit report were listed as "disputed."  As previously discussed, the pre-approval was conditional on there being no adverse change in Plaintiff's credit information.  It was only after Defendant received notice of the Court of Common Pleas' determination in October, 2006, that it became clear to Defendant and CFC that Plaintiff actually was obligated to pay such support and that he therefore could not afford the payments which the pre-approved loan would have required.

### C. Breach of Contract

As the court has found that Plaintiff has failed to prove the existence of a contract with TBW, the court finds that there is no reason to address TBW's argument that, because Plaintiff's VA loan was still open in its system when Plaintiff filed the instant suit, TBW did not breach any contract that may have existed.

Therefore, because Plaintiff was never pre-approved for an FHA loan, and because Plaintiff cannot show the existence of a mortgage contract for a VA loan, and because final approval of

-12-

Plaintiff's pre-approved VA loan application was conditional on having no adverse change in Plaintiff's credit information, and because Defendant did in fact receive information that indicated such an adverse change, the court hereby grants Defendant's Motion for Summary Judgment (ECF No. 22) and denies Plaintiff's Motion for Summary Judgment (ECF No. 19).

## IV. CONCLUSION

For the reasons stated above, the court hereby grants Defendant's Motion for Summary Judgment (ECF No. 22) and denies Plaintiff's Motion for Summary Judgment (ECF No. 19).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

March 19, 2008